UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRIAN REAVES, on behalf of himself
and all others similarly situated,

Plaintiffs,

v.

MFS SERIES TRUST I, MFS SERIES
TRUST II, MFS SERIES TRUST IV,
MFS SERIES TRUST V, MFS SERIES
TRUST IX, MFS SERIES TRUST X,
MFS GOVERNMENT SECURITIES
FUND, MASSACHUSETTS
INVESTORS TRUST, and
MASSACHUSETTS INVESTORS
GROWTH FUND,

Defendants.

05   10804 MEL

Civil Action No. _____

RECEIPT # ____ 63715
AMOUNT $ ____ 250.00
SUMMONS ISSUED  N/A
LOCAL RULE 4.1 ____
WAIVER FORM ____
MCF ISSUED ____
BY DPTY. CLK. ____ MP
DATE ____ 4/22/05

**NOTICE OF REMOVAL**

MAGISTRATE JUDGE ____ JLA

Pursuant to 28 U.S.C. §§ 1441(b) and 1446 and 15 U.S.C. §§ 77p(c) and/or 78bb(f)(2),

defendants MFS Series Trust I, MFS Series Trust II, MFS Series Trust IV, MFS Series Trust V,

MFS Series Trust IX, MFS Series Trust X, MFS Government Securities Fund, Massachusetts

Investors Trust and Massachusetts Investors Growth Fund (collectively, "Defendants") hereby

remove to this Court the above-captioned civil action now pending in the Suffolk County

Superior Court of the Commonwealth of Massachusetts (entitled Brian Reaves, et al. v. MFS

Series Trust I, et al., Civil Action No. 05-1094-H ("Subject Action")). As grounds for removal,

Defendants state:

## STATEMENT OF GROUNDS FOR REMOVAL

1.      On March 21, 2005, plaintiff Brian Reaves, on behalf of himself and others similarly situated (collectively, "Plaintiffs"), filed the Subject Action against Defendants in the Commonwealth of Massachusetts's Suffolk County Superior Court.  A true and accurate copy of Plaintiffs' complaint ("Complaint") as received by Defendants is attached hereto as Exhibit A.

2.      On March 23, 2005, the MFS Service Center received a copy of the Complaint, attached to an M.G.L. c. 93A demand letter, via certified mail.  The Complaint was served on the Defendants on April 21, 2005.  Defendants have not filed answers or other responsive pleadings in the Subject Action.

3.      The Subject Action is brought by Plaintiffs as a putative Massachusetts Rule of Civil Procedure 23 class action.  Plaintiffs have defined their proposed class to include holders of certain securities, namely Class B shares, in Defendant funds.  The Complaint states that:

> "This is a class action brought on behalf of plaintiff and all other
> holders of Class B shares of [Defendant funds] as of December 8,
> 2003 which are still subject to a Contingent Deferred Sales Charge
> ("CDSC") being assessed in the event they redeem such shares
> prior to the expiration of 6 years from purchase or have been
> assessed a CDSC for redeeming such shares on or after December
> 8, 2003."

(Exhibit A at ¶ 1).  While the Complaint contains one count alleging "breach of contract," it does not identify the alleged contract by name.  The CDSC fee upon which Plaintiffs' "breach of contract" claim is based is set forth in the prospectuses for each fund filed pursuant to the Securities Act of 1933, as amended (the "1933 Act"), and Rule 485(a) or 485(b) thereunder, as well as the Investment Company Act of 1940, as amended (the "1940 Act").

4.      The Complaint focuses on the impact that alleged market timing had on the price, or Net Asset Value ("NAV"), of Class B shares in Defendant funds.  (See Exhibit A at ¶¶ 16-17). The NAV reflects the market value of securities in a fund's portfolio, plus the fund's other assets

minus liabilities, divided by the outstanding number of shares. (*Id.* at ¶ 16). The Plaintiffs allege that market timing consists of the short-term trading of securities so as to benefit from market fluctuations, is often employed when the effect on particular securities is reasonably predictable, and may have detrimental effects on long-term securities investors. The Plaintiffs allege that the detrimental effects include dilution of the funds' value, increase in transactional costs, unfavorable capital gains tax consequences, and the sale of securities in an unfavorable market. (*Id.* at ¶ 17).

5.    The Complaint states that, by allegedly engaging in market timing, Defendants did not act in good faith, "engaged in unfair business practices" and possessed "seriously compromised integrity." (*Id.* at ¶ 20). Under Count I, the Complaint further alleges that Defendants "engage[ed] in unfair and deceptive trade practices in the performance of their contractual duties." (*Id.* at ¶ 30).

6.    The Complaint repeatedly refers to the purported class members' desire to sell their securities without paying a fee, using words and phrases such as "redemptions," "redeeming [the purported class members'] shares," "ceas[ing] doing business" with Defendants, or "elect[ing] to withdraw [the purported class members'] funds." (*See, e.g., id.* at ¶¶ 1-4, 9, 11, 20, 25-26 and 31). The Complaint alleges that the sale or desire to sell by the purported class members is related to the alleged securities manipulation, *i.e.*, market timing. (*See, e.g., id.* at ¶¶ 20, 22-26). The Complaint specifically alleges that "substantial redemptions by shareholders" following the disclosure of market timing charges "constitute[ed] a breach" of the contract. (*Id.* at ¶ 3).

7.    This Court has subject matter jurisdiction and removal is proper under 28 U.S.C. § 1441(a) and the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. §§ 77p(c)

and/or 78bb(f)(2). SLUSA provides that "[a]ny covered class action brought in any State court involving a covered security" which is "based upon the statutory or common law of any State maintained... by any private party alleging (1) an untrue statement or omission of material fact in connection with the purchase or sale of a covered security; or (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security" is removable to the Federal district court. 15 U.S.C. §§ 77p(b),(c) and/or 78bb(f)(1),(2).

8.      Per 15 U.S.C. §§ 77p(c) and/or 15 U.S.C. § 78bb(f)(2), this class action is removable because: (a) the suit is a covered class action; (b) brought in state court under state law; (c) involving "covered securities" (the Class B shares) which have been purchased or sold, in which (d) Plaintiffs have alleged that Defendants engaged in deceptive and manipulative practices in connection with purchases or sales of covered securities.

9.      Plaintiffs' description of Class Members as those who "hold[]" shares is irrelevant since the deferred sales charge that Plaintiffs challenge becomes applicable upon a Class Member's *purchase* of shares and becomes payable upon the *sale* of those shares. *See* Complaint ¶ 9; *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1345 (11th Cir. 2002) ("[T]hat class members purchase *and then retain* their Growth Fund shares does not necessarily add anything to the basic claim of purchasing, because all investors, by definition, hold their shares for at least some time after purchase") (emphasis in original); *Kircher v. Putnam Funds Trust, et al.*, 2005 WL 757255, *5 (7th Cir. Apr. 5, 2005) ("[P]laintiffs' effort to define non-purchaser-non-seller classes is designed to evade PSLRA in order to litigate a securities class action in state court in the hope that a local judge or jury may produce an

idiosyncratic award. It is the very sort of maneuver that SLUSA is designed to prevent."); *Cape Ann Investors LLC v. Lepone*, 296 F.Supp.2d 4 (D.Mass. 2003).

10.    Plaintiffs also allege that market timing improperly allowed certain investors "to take advantage of market fluctuations" through "short-term trading" practices. (*See* Complaint, ¶ 17). Claims relating to such trades are, as well, made in connection with the purchase or sale of securities. *See Kircher*, at *5 (claims based upon alleged misrepresentations and manipulative conduct relating to market timing are in connection with purchase and sale of securities).

11.    Plaintiffs' claims address issues that arise under the Investment Company Act of 1940 ("1940 Act"). That act preempts any state law claims of the nature present here. *See* 15 U.S.C. § 80a-49.

12.    Plaintiffs plainly cannot avoid federal jurisdiction through the "artful pleading" by which they attempt to disguise their federal action in the garb of state law claims. *See BIW Deceived, et al. v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America*, 132 F.3d 824, 829 (1st Cir. 1997) (Plaintiff's state law claims dependant upon an interpretation of a collective bargaining agreement are preempted by federal law). For example, Plaintiffs allege that Defendants "had an implied contractual duty to perform the investment advisor and management services in good faith." (Complaint, ¶ 29). This claim certainly intrudes upon areas governed by the 1940 Act, including the "forward pricing rules" that relate to the determination of a fund's "NAV," or "Net Asset Value." *See* Rule 22c-1 of the General Rules and Regulations under the 1940 Act (the "1940 Act Regulations"). Plaintiffs' claim therefore comes within the scope of the 1940 Act, notwithstanding Plaintiffs' attempt to couch it under state law. A plaintiff cannot avoid federal court by cloaking a federal question in state law claims. *See BIW Deceived*,

132 F.3d at 829. Removal based upon the federal jurisdiction provided by the 1940 Act is thus proper. *See* 28 U.S.C. § 1331.

13.    Plaintiffs' Complaint is a federal securities action, not a state contract action, similar to the consolidated class action concerning market timing currently before the Judicial Panel on Multidistrict Litigation (*In re Mutual Funds Investment Litig.*, MDL No. 1586), to which both Plaintiffs and Defendants are parties.

14.    Venue in this District is proper pursuant to 28 U.S.C. § 1441(a) and 15 U.S.C. §§ 77p(c) and/or 15 U.S.C. § 78bb(f)(2) because the Subject Action is pending within a state court located within this District.

15.    This Notice of Removal is filed in a timely manner with this Court within thirty (30) days of Defendants' receipt of the initial pleading permitting removal under 28 U.S.C. § 1446(b).

16.    In accordance with 28 U.S.C. § 1446(d), defendants certify that a Notice of Filing of this Notice of Removal will be served promptly on Plaintiffs through their counsel of record and filed promptly with the Clerk of the Court for the Suffolk County Superior Court.

17.    Included with this Notice of Removal is a filing fee of $250, as required by 28 U.S.C. § 1914.

18.    Pursuant to Local Rule 81.1(a), within thirty (30) days from the filing of this Notice of Removal, Defendants will file certified or attested copies of all records and proceedings in the Suffolk County Superior Court and a certified or attested copy of all docket entries in the Suffolk County Superior Court.

WHEREFORE, defendants respectfully request that this case be removed from state court to the United States District Court for the District of Massachusetts.

Respectfully Submitted,

MFS SERIES TRUST I, MFS SERIES TRUST II, MFS SERIES TRUST IV, MFS SERIES TRUST V, MFS SERIES TRUST IX, MFS SERIES TRUST X, MFS GOVERNMENT SECURITIES FUND, MASSACHUSETTS INVESTORS TRUST, and MASSACHUSETTS INVESTORS GROWTH FUND

By their attorneys,

John D. Donovan, Jr. (BBO# 130950)
Jane E. Willis (BBO# 568024)
ROPES & GRAY
One International Place
Boston, MA 02110-2624
Telephone:(617) 951-7000
Fax:(617) 951-7050

Dated: April 22, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this 22nd day of

April, 2005 by first class mail, upon the following counsel of record:

David Pastor
John C. Martlan
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906

Rabin & Peckel LLP
275 Madison Ave.
Suite 420
New York, NY 10016

Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067


Jane E. Willis

# EXHIBIT A

APR 14 2005

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

---------------------------------------------------------------X

BRIAN REAVES, on behalf of himself and all
others similarly situated

                      Plaintiff,

    v.

MFS SERIES TRUST I, MFS SERIES TRUST II, MFS
SERIES TRUST IV, MFS SERIES TRUST V, MFS
SERIES TRUST IX, MFS SERIES TRUST X, MFS
GOVERNMENT SECURITIES FUND,
MASSACHUSETTS INVESTORS TRUST, and
MASSACHUSETTS INVESTORS GROWTH FUND,

                      Defendants.

---------------------------------------------------------------X

Case No. **05-1094-H**

**CLASS ACTION
COMPLAINT**

**JURY TRIAL DEMANDED**

RECEIVED

MAR 21 2005

SUPERIOR COURT · CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

Plaintiff, by his undersigned attorneys, on personal knowledge as to himself and his

acts and on information and belief as to all other matters, based upon an investigation by Plaintiff's

counsel, alleges as follows:

## INTRODUCTION

1.  This is a class action brought on behalf plaintiff and all other holders of Class B

shares of MFS mutual funds as of December 8, 2003 which are still subject to a Contingent Deferred

Sales Charge ("CDSC") being assessed in the event they redeem such shares prior to the expiration

of 6 years from purchase or have been assessed a CDSC for redeeming such shares on or after

December 8, 2003. When a Class B shareholder withdraws money from a particular MFS Fund by

redeeming shares of that fund, a percentage of the proceeds is charged by MFS before the balance

is delivered to the shareholder. MFS calls this penalty a CDSC. Typically, the CDSC charge is 4%

00004380.WPD ; 2

for withdrawals in the first year after purchase, 4% in the second, 3% in the third and fourth, 2% in the fifth, and 1% in the sixth.

2. This claim is based upon the fact that MFS through certain of its employees (and agents) engaged in misconduct constituting a breach of contract with holders of Class B shares in a MFS Fund. Those holders of Class B shares who wish to cease doing business with the Fund may only do so by paying a penalty. In fact, such holders should be given the opportunity to withdraw money from MFS Funds without a penalty because an implied term of the agreement pursuant to which the investments were made was that MFS would conduct itself with a high degree of integrity and the fact that MFS did not so conduct itself amounts to a breach of contract, so that Class B shareholders should have the opportunity to withdraw their funds without penalty. Defendants' misconduct is also a breach of their obligation to act fairly and in good faith with respect to their contract, as well as a breach of their fiduciary duties of care, loyalty, and good faith.

3. The following facts and circumstances alleged below constitute a breach of the agreement, and the covenants of good faith and fair dealing, between defendants and class members in that defendants' actions give rise to serious doubts concerning the integrity of defendants. In particular, (a) the payment of $225 million in disgorgement and penalties; (b) the specificity of the wrongdoing alleged by the governmental agencies; (c) the substantial redemptions by shareholders following the charges being made public; (d) the adverse reporting in the media; (e) the plethora of actions, including class actions, commenced against defendants; (f) the increased outflow of shareholder funds from the defendants, and the decreased inflow of funds to defendants, giving rise to possible adverse consequences for class members, i.e. among other things, increased administrative costs and forced sales of stock to raise money for redemptions.

4. Class members should not be forced to perform under an agreement which has been breached by defendants. In particular, class members should be free to decide whether, under the circumstances, they wish to remain shareholders without the disincentive of a penalty if they decide to redeem their shares and shareholders who were penalized for redeeming their shares after the above charges were made public should be refunded the amount of the penalty.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the Defendants MFS as they have their headquarters and do substantial business in the Commonwealth of Massachusetts.

6. Venue is proper as Defendants MFS have their principal place of business in Boston, Suffolk County, Massachusetts. The Defendants have, at all times material to this complaint, conducted business in this Commonwealth related to the events giving rise to the claims asserted in this complaint and are registered to do business in the Commonwealth of Massachusetts. Many of the witnesses and a substantial number of the documents and sources of proof are located in Massachusetts.

## PARTIES

7. Plaintiff Brian Reaves was a holder of 109 shares of MFS Value Fund B shares issued by MFS as of December 8, 2003.

8. Defendants MFS Series Trust I, MFS Series Trust II, MFS Series Trust IV, MFS Series Trust V, MFS Series Trust IX, MFS Series Trust X, MFS Government Securities Fund, Massachusetts Investors Trust, and Massachusetts Investors Growth Fund (collectively, "MFS") are open-end registered investment companies organized under the laws of the Commonwealth of Massachusetts as business trusts. MFS maintains its principal executive offices at 500 Boylston Street, Boston, Suffolk County, MA 02116. MFS is the registrant under the Securities

Act of 1933 and Investment Company Act of 1940. MFS has approximately 140 mutual funds which have as many as several classes of shares (A, B, C, R1, R2, 529A, 529B and 529C) for each fund. MFS funds were the subject of improper market timing.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

9. Plaintiff brings this action as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of himself and other members of the Class, consisting of all holders of Class B Shares of MFS mutual funds as of December 8, 2003 which are still subject to a CDSC being assessed in the event they redeem such shares prior to the expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on or after December 8, 2003.

10. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff, and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class. Record owners and members of the Class may be identified from records maintained by MFS and may be notified of the pendency of this action by mail, using the form of notice typically used in class actions.

11. Plaintiff's claims are typical of the claims of the putative Class members. Specifically, Plaintiff claims that Defendants' conduct injured Plaintiff and Class members alike by assessing CDSC fees to all Class members who redeem their shares on or after December 8, 2003.

12. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. The common questions of law and fact include:

00004380.WPD ; 2                                              4

(a) Whether defendants have breached their fiduciary duty to Plaintiff and the Class;

(b) Whether defendants have breached their duties of good faith and fair dealing; and

(c) Whether defendants' conduct constitutes a breach of contract.

13.  Plaintiff can and will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class action litigation to vigorously prosecute this action on behalf of the putative class members.

14.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to seek redress individual for the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FACTS

### BACKGROUND

15.  A Mutual Fund is a fund that is managed by an investment company that manages the money of its shareholders.

16.  Mutual funds are priced once a day, at 4:00 p.m. EST.  The price, known as the Net Asset Value ("NAV"), generally reflects the closing prices of the securities that comprise a given fund's portfolio, plus the value of any cash that the fund manager maintains for the fund, divided by the number of outstanding shares.

17.  Market timing is an investment strategy that involves the short-term trading of securities to take advantage of market fluctuations.  Market timing is often employed where one can predict with reasonable certainty the effect on a particular security.  Market timing works to the detriment of long-term shareholders in a number of ways: (a) market timing dilutes the value of the fund by allowing the timer to siphon short term profits from what is otherwise a long-term investment vehicle; (b) market timing may add to the transactional costs of the fund because of more frequent purchases and sales; (c) the fund may realize taxable capital gains at an undesirable time; and (d) market timing may result in managers having to sell stock into a falling market.  Where money is not invested in the fund, but is kept in cash, then the fund's shareholders are deprived of the advantages of being fully invested in an appreciating stock market.

## THE CLASS B SHARES

18.  The MFS Funds claims that the interests of fund shareholders their highest priority.  They had a reputation for good faith and fair dealing, and for strict adherence to their duties as a fiduciary: loyalty, candor, and due care which eschews any sort of unfair business practices.

19.  MFS contracted, agreed, represented and warranted that it would continue to conduct its business at the same level of integrity while purchasers of B shares held those shares.

20.  MFS violated its agreement by engaging in various forms of misconduct, including market timing, which indicated, among other things, that the interests of the fund shareholders was not the highest priority, that they did not act in good faith, that they engaged in unfair business practices, and that their integrity was seriously compromised.  Under these circumstances, holders of B shares should be allowed to redeem their shares without penalty.

00004380.WPD ; 2                                                6

21.  MFS has been subject to a series of investigations by federal and state regulators.

**Governmental Action**

22.  On December 8, 2003, MFS disclosed that it had been notified by the SEC that its staff had recommended action be taken against MFS and certain of its officers arising from its market timing activities.

23.  On February 5, 2004, MFS settled charges with the SEC, the New York Attorney General's Office, and the New Hampshire Bureau of Securities Regulation.  In connection therewith, the SEC filed an Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order settling the matter.  Pursuant to the Order, the SEC made a litany of findings constituting misconduct, $175 million was to be paid in disgorgement and $50 million was to be paid in civil penalties, and a number of remedial initiatives would be instituted.

24.  In sum, a total of $225 million was paid in disgorgement and penalties as a result of the wrongful conduct complained of herein.  Further a number of costly remedial initiatives were instituted to prevent such future conduct.

25.  Notwithstanding the foregoing, Class Members who wish to sell their shares and so cease doing business with MFS have been and will be required to pay a significant CDSC charge.

26.  MFS's breach of contract – its failure to maintain, in the words of Benjamin Cardozo, "the punctilio of an honor most sensitive" – allows Plaintiff and the other members of the Class to decide whether they wish to continue to invest in a tainted company and, if he wishes, to sell his shares without penalty.  Plaintiff and the other members of the Class should

not be required to keep their money at risk with an allegedly unethical or dishonest company which has breached its contract with Plaintiff and the other members of the Class.

## COUNT I
### (Breach of Contract)

27. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

28. Defendants agreed to perform investment advisor and management services to Plaintiff and the other members of the Class.

29. Defendants had an implied contractual duty to perform the investment advisor and management services in good faith.

30. Defendants breached its contract with Plaintiff and all Class members and the covenant of good faith and fair dealing in the performance of those contracts, by:

(a) engaging in various forms of misconduct, including market timing;

(b) by failing to act in the best interests of the Class B shareholders; and

(c) by engaging in unfair and deceptive trade practices in the performance of their contractual duties.

31. Defendants' breaches of contract and the implied covenant of good faith and fair dealing were so material as to justify Plaintiff and all class members to terminate the contracts, and render it inequitable for Defendants to collect the Contingent Deferred Sales Charge from Plaintiff and all Class members who elect to withdraw their funds.

00004380.WPD ; 2

8

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the Class prays for judgment as follows:

      (i)    Certifying that this action may be maintained as a class action pursuant to the provisions of Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of all holders of MFS Class B shareholders during the Class Period;

      (ii)    Designating Plaintiff and Plaintiff's counsel as class representative and class counsel, respectively;

      (iii)    Entering Judgment against Defendants and in favor of Plaintiff and the Class on all claims;

      (iv)    Requiring Defendants to pay Plaintiff's and each Class member their actual damages;

      (iv)    Granting Plaintiff and the other members of the Class equitable relief from the Contingent Deferred Sales Charge;

      (v)    Requiring Defendants to pay Plaintiff's reasonable attorney's fees and costs of suit; and

      (vi)    Such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all such issues that are triable before a jury.

Dated: March 21, 2005

Respectfully submitted

David Pastor (BBO#391000)
John C. Martland (BBO#322980)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850
Facsimile: (781) 231-7840

RABIN & PECKEL LLP
275 Madison Avenue
Suite 420
New York, NY 10016
(212) 880-3722

GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
(310) 201-9150

**ATTORNEYS FOR PLAINTIFF**

00004380.WPD ; 2

10

POST70030500000440948994

MFSC/OPS
SERVICE CENTER

2005 MAR 23  PH 12: 19

RECEIVED