COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                        SUPERIOR COURT DEPARTMENT
                                                    OF THE TRIAL COURT

---------------------------------------------------------X
BRIAN REAVES, on behalf of himself and all      :   Case No. 05-1091-X
others similarly situated                       :
                    Plaintiff,                  :
                                                :   **CLASS ACTION**
v.                                              :   **COMPLAINT**
                                                :
MFS SERIES TRUST I, MFS SERIES TRUST II, MFS    :   **JURY TRIAL DEMANDED**
SERIES TRUST IV, MFS SERIES TRUST V, MFS        :
SERIES TRUST IX, MFS SERIES TRUST X, MFS        :
GOVERNMENT SECURITIES FUND,                     :
MASSACHUSETTS INVESTORS TRUST, and              :
MASSACHUSETTS INVESTORS GROWTH FUND,            :
                                                :
                    Defendants.                 :
---------------------------------------------------------X

Plaintiff, by his undersigned attorneys, on personal knowledge as to himself and his acts and on information and belief as to all other matters, based upon an investigation by Plaintiff's counsel, alleges as follows:

## INTRODUCTION

1. This is a class action brought on behalf plaintiff and all other holders of Class B shares of MFS mutual funds as of December 8, 2003 which are still subject to a Contingent Deferred Sales Charge ("CDSC") being assessed in the event they redeem such shares prior to the expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on or after December 8, 2003. When a Class B shareholder withdraws money from a particular MFS Fund by redeeming shares of that fund, a percentage of the proceeds is charged by MFS before the balance is delivered to the shareholder. MFS calls this penalty a CDSC. Typically, the CDSC charge is 4%

for withdrawals in the first year after purchase, 4% in the second, 3% in the third and fourth, 2% in the fifth, and 1% in the sixth.

2. This claim is based upon the fact that MFS through certain of its employees (and agents) engaged in misconduct constituting a breach of contract with holders of Class B shares in a MFS Fund. Those holders of Class B shares who wish to cease doing business with the Fund may only do so by paying a penalty. In fact, such holders should be given the opportunity to withdraw money from MFS Funds without a penalty because an implied term of the agreement pursuant to which the investments were made was that MFS would conduct itself with a high degree of integrity and the fact that MFS did not so conduct itself amounts to a breach of contract, so that Class B shareholders should have the opportunity to withdraw their funds without penalty. Defendants' misconduct is also a breach of their obligation to act fairly and in good faith with respect to their contract, as well as a breach of their fiduciary duties of care, loyalty, and good faith.

3. The following facts and circumstances alleged below constitute a breach of the agreement, and the covenants of good faith and fair dealing, between defendants and class members in that defendants' actions give rise to serious doubts concerning the integrity of defendants. In particular, (a) the payment of $225 million in disgorgement and penalties; (b) the specificity of the wrongdoing alleged by the governmental agencies; (c) the substantial redemptions by shareholders following the charges being made public; (d) the adverse reporting in the media; (e) the plethora of actions, including class actions, commenced against defendants; (f) the increased outflow of shareholder funds from the defendants, and the decreased inflow of funds to defendants, giving rise to possible adverse consequences for class members, i.e. among other things, increased administrative costs and forced sales of stock to raise money for redemptions.

4. Class members should not be forced to perform under an agreement which has been breached by defendants. In particular, class members should be free to decide whether, under the circumstances, they wish to remain shareholders without the disincentive of a penalty if they decide to redeem their shares and shareholders who were penalized for redeeming their shares after the above charges were made public should be refunded the amount of the penalty.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the Defendants MFS as they have their headquarters and do substantial business in the Commonwealth of Massachusetts.

6. Venue is proper as Defendants MFS have their principal place of business in Boston, Suffolk County, Massachusetts. The Defendants have, at all times material to this complaint, conducted business in this Commonwealth related to the events giving rise to the claims asserted in this complaint and are registered to do business in the Commonwealth of Massachusetts. Many of the witnesses and a substantial number of the documents and sources of proof are located in Massachusetts.

## PARTIES

7. Plaintiff Brian Reaves was a holder of 109 shares of MFS Value Fund B shares issued by MFS as of December 8, 2003.

8. Defendants MFS Series Trust I, MFS Series Trust II, MFS Series Trust IV, MFS Series Trust V, MFS Series Trust IX, MFS Series Trust X, MFS Government Securities Fund, Massachusetts Investors Trust, and Massachusetts Investors Growth Fund (collectively, "MFS") are open-end registered investment companies organized under the laws of the Commonwealth of Massachusetts as business trusts. MFS maintains its principal executive offices at 500 Boylston Street, Boston, Suffolk County, MA 02116. MFS is the registrant under the Securities

Act of 1933 and Investment Company Act of 1940. MFS has approximately 140 mutual funds which have as many as several classes of shares (A, B, C, R1, R2, 529A, 529B and 529C) for each fund. MFS funds were the subject of improper market timing.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

9. Plaintiff brings this action as a class action pursuant to Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of himself and other members of the Class, consisting of all holders of Class B Shares of MFS mutual funds as of December 8, 2003 which are still subject to a CDSC being assessed in the event they redeem such shares prior to the expiration of 6 years from purchase or have been assessed a CDSC for redeeming such shares on or after December 8, 2003.

10. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff, and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class. Record owners and members of the Class may be identified from records maintained by MFS and may be notified of the pendency of this action by mail, using the form of notice typically used in class actions.

11. Plaintiff's claims are typical of the claims of the putative Class members. Specifically, Plaintiff claims that Defendants' conduct injured Plaintiff and Class members alike by assessing CDSC fees to all Class members who redeem their shares on or after December 8, 2003.

12. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. The common questions of law and fact include:

00004380.WPD ; 2                                           4

(a) Whether defendants have breached their fiduciary duty to Plaintiff and the Class;

(b) Whether defendants have breached their duties of good faith and fair dealing; and

(c) Whether defendants' conduct constitutes a breach of contract.

13. Plaintiff can and will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class action litigation to vigorously prosecute this action on behalf of the putative class members.

14. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to seek redress individual for the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FACTS

**BACKGROUND**

15. A Mutual Fund is a fund that is managed by an investment company that manages the money of its shareholders.

16. Mutual funds are priced once a day, at 4:00 p.m. EST. The price, known as the Net Asset Value ("NAV"), generally reflects the closing prices of the securities that comprise a given fund's portfolio, plus the value of any cash that the fund manager maintains for the fund, divided by the number of outstanding shares.

17. Market timing is an investment strategy that involves the short-term trading of securities to take advantage of market fluctuations. Market timing is often employed where one can predict with reasonable certainty the effect on a particular security. Market timing works to the detriment of long-term shareholders in a number of ways: (a) market timing dilutes the value of the fund by allowing the timer to siphon short term profits from what is otherwise a long-term investment vehicle; (b) market timing may add to the transactional costs of the fund because of more frequent purchases and sales; (c) the fund may realize taxable capital gains at an undesirable time; and (d) market timing may result in managers having to sell stock into a falling market. Where money is not invested in the fund, but is kept in cash, then the fund's shareholders are deprived of the advantages of being fully invested in an appreciating stock market.

### THE CLASS B SHARES

18. The MFS Funds claims that the interests of fund shareholders their highest priority. They had a reputation for good faith and fair dealing, and for strict adherence to their duties as a fiduciary: loyalty, candor, and due care which eschews any sort of unfair business practices.

19. MFS contracted, agreed, represented and warranted that it would continue to conduct its business at the same level of integrity while purchasers of B shares held those shares.

20. MFS violated its agreement by engaging in various forms of misconduct, including market timing, which indicated, among other things, that the interests of the fund shareholders was not the highest priority, that they did not act in good faith, that they engaged in unfair business practices, and that their integrity was seriously compromised. Under these circumstances, holders of B shares should be allowed to redeem their shares without penalty.

21. MFS has been subject to a series of investigations by federal and state regulators.

**Governmental Action**

22. On December 8, 2003, MFS disclosed that it had been notified by the SEC that its staff had recommended action be taken against MFS and certain of its officers arising from its market timing activities.

23. On February 5, 2004, MFS settled charges with the SEC, the New York Attorney General's Office, and the New Hampshire Bureau of Securities Regulation. In connection therewith, the SEC filed an Order Instituting Administrative and Cease-and-Desist Proceedings, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order settling the matter. Pursuant to the Order, the SEC made a litany of findings constituting misconduct, $175 million was to be paid in disgorgement and $50 million was to be paid in civil penalties, and a number of remedial initiatives would be instituted.

24. In sum, a total of $225 million was paid in disgorgement and penalties as a result of the wrongful conduct complained of herein. Further a number of costly remedial initiatives were instituted to prevent such future conduct.

25. Notwithstanding the foregoing, Class Members who wish to sell their shares and so cease doing business with MFS have been and will be required to pay a significant CDSC charge.

26. MFS's breach of contract – its failure to maintain, in the words of Benjamin Cardozo, "the punctilio of an honor most sensitive" – allows Plaintiff and the other members of the Class to decide whether they wish to continue to invest in a tainted company and, if he wishes, to sell his shares without penalty. Plaintiff and the other members of the Class should

not be required to keep their money at risk with an allegedly unethical or dishonest company which has breached its contract with Plaintiff and the other members of the Class.

## COUNT I
## (Breach of Contract)

27. Plaintiff realleges and incorporates by reference each and every allegation of this complaint as if fully restated herein.

28. Defendants agreed to perform investment advisor and management services to Plaintiff and the other members of the Class.

29. Defendants had an implied contractual duty to perform the investment advisor and management services in good faith.

30. Defendants breached its contract with Plaintiff and all Class members and the covenant of good faith and fair dealing in the performance of those contracts, by:

(a) engaging in various forms of misconduct, including market timing;

(b) by failing to act in the best interests of the Class B shareholders; and

(c) by engaging in unfair and deceptive trade practices in the performance of their contractual duties.

31. Defendants' breaches of contract and the implied covenant of good faith and fair dealing were so material as to justify Plaintiff and all class members to terminate the contracts, and render it inequitable for Defendants to collect the Contingent Deferred Sales Charge from Plaintiff and all Class members who elect to withdraw their funds.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the Class prays for judgment as follows:

(i) Certifying that this action may be maintained as a class action pursuant to the provisions of Rule 23 of the Massachusetts Rules of Civil Procedure on behalf of all holders of MFS Class B shareholders during the Class Period;

(ii) Designating Plaintiff and Plaintiff's counsel as class representative and class counsel, respectively;

(iii) Entering Judgment against Defendants and in favor of Plaintiff and the Class on all claims:

(iv) Requiring Defendants to pay Plaintiff's and each Class member their actual damages;

(iv) Granting Plaintiff and the other members of the Class equitable relief from the Contingent Deferred Sales Charge;

(v) Requiring Defendants to pay Plaintiff's reasonable attorney's fees and costs of suit; and

(vi) Such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all such issues that are triable before a jury.

Dated: March 21, 2005

Respectfully submitted

David Pastor (BBO#391000)
John C. Martland (BBO#322980)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850
Facsimile: (781) 231-7840

RABIN & PECKEL LLP
275 Madison Avenue
Suite 420
New York, NY 10016
(212) 880-3722

GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
(310) 201-9150

**ATTORNEYS FOR PLAINTIFF**

I HEREBY ATTEST AND CERTIFY ON
APRIL 26, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

# CIVIL ACTION COVER SHEET

**DOCKET NO.(S)** 05-1694

**Trial Court of Massachusetts Superior Court Department**
County: SUFFOLK

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| BRIAN REAVES | MFS SERIES TRUST I, et al. |

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
David Pastor, GILMAN AND PASTOR, LLP
999 Broadway, Suite 500, Saugus, MA 01906
Board of Bar Overseers number: 391000  (781) 231-7850

**ATTORNEY** (if known)

## Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Breach of Good Faith | (F) | (X) Yes ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ..... $
  2. Total Doctor expenses ..... $
  3. Total chiropractic expenses ..... $
  4. Total physical therapy expenses ..... $
  5. Total other expenses (describe) ..... $
     Subtotal $
B. Documented lost wages and compensation to date ..... $
C. Documented property damages to date ..... $
D. Reasonably anticipated future medical and hospital expenses ..... $
E. Reasonably anticipated lost wages ..... $
F. Other documented items of damages (describe) $
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

TOTAL $

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):
Class action complaint alleging breach of the covenant of good faith and fair dealing. Plaintiff/Class seek to recover/preclude Contingent Deferred Service Charge assessed class members for redemption of Class B Shares after Defendants engaged in Market Timing transactions. **TOTAL $.** .............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _[signed] David Pastor_   DATE: 03/17/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON APRIL 26, 2005 THAT THE FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _[signed]_
ASSISTANT CLERK

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this 3rd day of May, 2005 by first class mail, upon the following counsel of record:

David Pastor
John C. Martlan
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906

Rabin & Peckel LLP
275 Madison Ave.
Suite 420
New York, NY 10016

Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067

*Carisa A. Klemeyer*
Carisa A. Klemeyer
(BBO# 655045)